# Dukes County Registry of Deeds

# Electronically Recorded Document

This is the first page of the document - Do not remove

## Recording Information

| | |
|---|---|
| Document Number | : 733 |
| Document Type | : AFF |
| Recorded Date | : February 04, 2016 |
| Recorded Time | : 10:19:40 AM |
| Recorded Book and Page | : 01397 / 882 |
| Number of Pages(including cover sheet) | : 14 |
| Receipt Number | : 171688 |
| Recording Fee | : $75.00 |

**Dukes County Registry of Deeds**
**Dianne E. Powers, Register**
**81 Main Street**
**PO Box 5231**
**Edgartown, MA 02539**
**508-627-4025**
www.Masslandrecords.com

# Affidavit Regarding Note Secured by Mortgage to be Foreclosed

Property Address: 17 Old South Road, Aquinnah, MA

Re: Mortgage from Matthew Vanderhoop to Sovereign Bank dated April 24, 2007:

[ X ] Recorded in Dukes County Registry of Deeds in Book 1119, Page 298.
[  ] Filed in Dukes Registry District of the Land Court as Document No. and noted on Certificate of Title No.

Assigned to WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-10TT by assignment(s) dated and recorded/files as follows:

> Assignment from MTGLQ Investors, L.P. to WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-10TT dated February 2, 2015.
> [ X ] Recorded in Dukes County Registry of Deeds in Book 01375, Page 876.
> [  ] Filed in Dukes Registry District of the Land Court as Document No. _____ and noted on Certificate of Title No.

> Previous Assignment from Santander Bank, N.A., formerly known as Sovereign Bank, its successors and assigns to MTGLQ Investors, L.P. dated September 9, 2014.
> [ X ] Recorded in Dukes County Registry of Deeds in Book 01375, Page 179.
> [  ] Filed in Dukes Registry District of the Land Court as Document No. _____ and noted on Certificate of Title No.

Angela Farmer
Angela Farmer

The undersigned, _____, having personal knowledge of the facts herein stated, under oath deposes and says as follows:

1. I am:
   [Check One]
   [ ] A _____ of WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-10TT, where I hold the office of _____.

[X] A _____Vice President_____ of Rushmore Loan Management Services LLC, the duly authorized agent of WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-10TT, under a power of attorney or other written instrument executed under seal, which remains in full force and effect as of the date hereof and which is:

    [Check One]
    [X] recorded in Worcester County (Worcester District) Registry of Deeds
        [Check One]
        [X] in Book 54168, Page 35.
        [ ] herewith
    [ ] filed in _____ Registry District of the Land Court
        [Check One]
        [ ] as Document No. _____
        [ ] herewith

2. Rushmore Loan Management Services LLC is a business. I am familiar with and have personal knowledge of the record keeping practices and procedures of Rushmore Loan Management Services LLC with regard to mortgage loan servicing. Rushmore Loan Management Services LLC services mortgage loan accounts in the regular course of its business and makes in the regular course of its business records of the acts, transactions, events and occurrences regarding and pertaining to the mortgage loan accounts it services. The record of each act, transaction, event and occurrence is made at the time of the act, transaction, event and occurrence or within a reasonable time thereafter. I have personally reviewed Rushmore Loan Management Services LLC business records that relate to the Mortgage, which Mortgage is more particularly described above. In this capacity and by reason of the foregoing, I have personal knowledge of the facts stated in this affidavit.

3. Based upon my review of the business records of Rushmore Loan Management Services LLC, I certify that:
    (a.) [check ONLY box (i) or (ii)]
        (i)    [ X ] The subject loan may be a "Certain Mortgage Loan" as defined by G.L. c. 244, §35B (a) because one or more of the following is true:
- The loan contained an introductory rate for three (3) years or less which is at least two (2.0%) per cent lower than the fully indexed rate.
- The loan contained interest- only payments for any period of time and the loan is not an open-end home equity line of credit or construction loan.
- The loan contained a payment option feature, where any one of the payment options is less than principal and interest fully amortized over the life of the loan.

- The loan did not require full documentation of income or assets.
- The loan contained prepayment penalties in excess of those allowable under G.L. c. 183, §56 or other applicable federal law. Namely:

    i) The mortgage note is secured by a first lien or second or subsequent lien on a dwelling house of 4 or less separate households or on a residential condominium unit occupied or to be occupied in whole or in part by the mortgagor (if this is not true then do not check the box and skip this section through section iv below on this affidavit); <u>AND</u>

    ii) The mortgage note provides that if the note is paid before the date fixed for payment an additional payment is required in excess of the balance of the first year's interest or 3 month's interest whichever is less, except that:
    - C. if the anticipatory payment is made within 36 months from the date of the note for the purpose of refinancing such loan in another financial institution an additional payment not in excess of 3 month's interest may be required; OR
    - D. if the mortgage loan is insured by the Federal Housing Commissioner the mortgage note may provide that if the note is paid before the date fixed for payment the mortgagor may be required to reimburse the mortgagee to the full amount of any charges, premiums, or fees required by any statute or by any regulation of the Federal Housing Administrator to be paid by the mortgagee upon payment of the note before the date fixed for payment; OR

    iii) The mortgage note requires a prepayment fee or additional penalty to be paid by mortgagor in the event the mortgage note was paid in full after 36 months after the date of the note; OR

    iv) The mortgage note requires a prepayment fee or penalty for making additional payments toward the principal balance.

- The loan was underwritten with a loan-to-value ratio at or above 90 per cent <u>AND</u> the ratio of the borrower's debt (including all housing-related and recurring monthly debt) to the borrower's income exceeded 38 per cent.
- The loan was underwritten as a component of a loan transaction, in which the combined loan-to-value ratio exceeded 95 per cent.

<u>OR</u>
- After performance of due diligence it cannot presently be determined if some or all of the above are true.

ii. [ ] The loan is not a Certain Mortgage Loan because it does not meet any of the criteria listed under Section 3.(a)(i). above.

4. [Check only ONE box below]

   (i) [ X ] **The requirements of G.L. c. 244, §35B have been satisfied because:**
   Mortgagor(s) was sent a notice of his/her rights to pursue a modified mortgage loan and either the mortgagor(s) failed to timely respond to said notification or the mortgagor(s) did respond and the mortgage was not modified and no foreclosure alternatives were consummated. As applicable Rushmore Loan Management Services LLC had taken reasonable steps and made a good faith effort to avoid foreclosure, as required by G.L. c. 244, §35B..

   (ii) [ ] **G.L. c. 244, §35B is not applicable to the above mortgage because one or more of the following is true:**
   - A demand letter pursuant to G.L. c. 244, § 35A was sent to the Mortgagor(s) prior to August 3, 2012.
   - The loan was financed by the Massachusetts Housing Finance Agency.
   - The loan was originated through programs administered by the Massachusetts Housing Partnership Fund board.
   - The loan is not a Certain Mortgage Loan because it does not meet any of the criteria listed under Section 3.a. above.

5. As of the date of this Affidavit WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-10TT is:

   [Check One]
   [X] the holder of the promissory note in the amount of $850,000.00 secured by the above mortgage.
   OR
   [ ] the authorized agent of the holder of the promissory note in the amount of $850,000.00, secured by said mortgage.

6. Attached as **Exhibit A** is a true and correct copy of the promissory note referenced above.

Signed under the penalties of perjury this 22 day of Jan, 2016.

<u>*aFarmer*</u>
WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-10TT by Rushmore Loan Management Services LLC, its appointed attorney in fact

Name: Angela Farmer

Title: Vice President

STATE OF Texas
COUNTY OF Dallas ss:

Jan 22, 2016

Then personally appeared the above named *Angela Farmer*, proved to me through satisfactory evidence of identification, which was *personally known*, to be the person whose name is signed on this document, and who swore or affirmed to me that the contents of this document are truthful and accurate to the best of (his) (her) knowledge and belief, as *Vice President* of WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, not in its individual capacity but solely as Trustee for BCAT 2014-10TT by Rushmore Loan Management Services LLC, its appointed attorney in fact, as aforesaid.

*Pamela G. Paschall*
Notary Public: Pamela G. Paschall
My Commission Expires: May 6, 2019

PAMELA G PASCHALL
My Commission Expires
May 6, 2019

## CERTIFICATE

I, \_\_\_\_\_Eva Massimino\_\_\_\_\_ hereby certify that I am an attorney at law with offices at Bendett & McHugh, P.C., and that the facts stated in the foregoing affidavit are relevant to the title to the premises therein described and will be of benefit and assistance in clarifying the chain of title thereto.

*[signature]*

Name: Eva Massimino



# FIXED/ADJUSTABLE RATE NOTE
(One-Year Treasury Index - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

April 24, 2007         MILTON             MASSACHUSETTS
(Date)                 (City)             (State)

17 OLD SOUTH ROAD
AQUINNAH, MA  02535
(Property Address)

1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $850,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Sovereign Bank.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.990 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. PAYMENTS
   (A) Time and Place of Payments
   I will pay principal and interest by making a payment every month.
   I will make my monthly payments on the first day of each month beginning on June 01, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on May 01, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at 1130 Berkshire Blvd., Wyomissing, PA  19610

or at a different place if required by the Note Holder.
   (B) Amount of My Initial Monthly Payments
   Each of my initial monthly payments will be in the amount of U.S. $5,090.72. This amount may change.
   (C) Monthly Payment Changes
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
   (A) Change Dates
   The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of May, 2012, and the adjustable interest rate I will pay may change on that day every 12th month thereafter.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - ONE-YEAR TREASURY INDEX - Single Family - Fannie Mae UNIFORM INSTRUMENT

Form 3522 1/01

Wolters Kluwer Financial Services
VMP®-843N (0805).01
Page 1 of 5

■ = redacted information

The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Three percentage points ( 3.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.990 % or less than 3.000 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.990 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.




## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:



Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MATTHEW J. VANDERHOOP
                                 -Borrower

_____ (Seal)
                                 -Borrower
~~-Borrower~~
Witness

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

[Sign Original Only]




Note Allonge

Loan: [redacted]
Borrower: MATTHEW J. VANDERHOOP
Property Address: 17 OLD SOUTH RD, AQUINNAH, MASSACHUSETTS 02535
Loan Amount: $850,000.00

For the purpose of endorsement of the attached Note, this Allonge is affixed and becomes a permanent part of said Note.

Pay to the order of:

MTGLQ INVESTORS, L.P., without recourse

SANTANDER BANK, N.A., FORMERLY KNOWN AS SOVEREIGN BANK

By: *[signature]*
Name: CARLIE P. SPEECH
Title: Assistant Vice President

VANDERHOOP          KASOTA
MTGL                SANTANDER-PRIV

# NOTE ALLONGE

Loan Number: ▮▮▮▮▮▮▮▮

Borrower Name: MATTHEW J. VANDERHOOP

Property Address: 17 OLD SOUTH ROAD
AQUINNAH, MA 02535

Original Note Date: 04/24/2007

Original Note Amount: $850,000.00

PAY TO THE ORDER OF:

WILMINGTON SAVINGS FUND SOCIETY, FSB, DOING BUSINESS AS CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR BCAT 2014-10TT

Without Recourse,

MTGLQ INVESTORS, LP

BY: *[signature]*
Name: Lynn Bluege-Ruet
Title: ATTORNEY IN FACT

ATTEST: Dianne E. Powers, Register